**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**


FRANK DAVIS,                                       :

     Plaintiff,                               :          Case No.  3:08cv0412

 vs.                                                    :          District Judge Thomas M. Rose
                                                              Magistrate Judge Sharon L. Ovington

THE CLARK COUNTY BOARD OF            :
COMMISSIONS, et al.,
                                                            :
     Defendants.

# REPORT AND RECOMMENDATIONS[1]

## I.      INTRODUCTION

    Plaintiff,  Frank Davis, brings his Complaint against the Clark County Board of

Commissioners, the City of Springfield, and several individuals associate with the Clark

County Board of Commissioners and the City of Springfield concerning a search of Frank

Davis's home, the "very place the Founding fathers were most concerned about

protecting when they wrote and adopted a rule against unlawful searches." *Harper v.*

*Jackson*, 293 Fed. Appx. 389, 393 (6th Cir. 2008). Plaintiff brings this action for

violations of the U.S. Constitution pursuant to 42 U.S.C. §1983, as well as several

additional state tort claims. (Doc #3).

    This case is before the Court upon Defendants' Detective Greg Nourse, Chief

---

[1]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

Steve Moody, and the City of Springfield Motion for Judgment on the Pleadings (Doc. #13), Plaintiff's Response in Opposition (Doc. #17), and Defendant Springfield's Reply Memorandum (Doc. #20). In addition, this case is before the Court upon Defendants' Clark County Board of Commissioners, Stephen Schumacher, and Stephen Collins Motion for Judgment on the Pleadings or, in the alternative, Motion for Summary Judgment (Doc. #16), Plaintiff's Response in Opposition (Doc. #21), and Defendant Clark County's Reply Memorandum (Doc. #22).

Lastly, this case is before the Court upon Plaintiff's Motion for Leave to File an Amended Complaint (Doc. #18), Defendants' Detective Greg Nourse, Chief Steven Moody, and the City of Springfield Memorandum in Opposition (Doc. #19), and the record as a whole.

## II.    FACTUAL BACKGROUND[2]

On November 23, 1998, Plaintiff resided at 1578 Charles Street in the City of Springfield, Clark County, Ohio. On that date, Springfield Police Detective Greg Nourse obtained a search warrant pursuant to a defective affidavit, allowing him to search Plaintiff's home. During the search of Plaintiff's home, Defendant Springfield, through Detective Nourse, confiscated items of personal property, including currency. As a result of that search, Plaintiff was charged with three counts of drug related crimes.

Plaintiff filed a Motion to Suppress on March 25, 1999. The trial court denied

---

[2] The following description accepts as true Plaintiff's well-pled factual allegations.

Plaintiff's Motion to Suppress, and Plaintiff was subsequently convicted, sentenced, and incarcerated on February 7, 2000. Plaintiff appealed the denial of his Motion to Suppress and on March 31, 2006, the Second District Court of Appeals held that the search warrant affidavit was insufficient to warrant probable cause. The Court reversed the ruling of the trial court and remanded the case for further proceedings.

Upon remand, the trial court ruled that the reversal only applied to Plaintiff's possession of cocaine conviction, and determined that the Plaintiff should not be released from prison. Plaintiff again appealed the decision of the trial court and, on September 29, 2006, the Second District Court of Appeals held that its previous decision voided all of Plaintiff's convictions. Plaintiff was released on October 12, 2006.

Plaintiff filed suit against Defendants Springfield and Clark County on October 6, 2008. Plaintiff sues Detective Nourse for violations of his rights under the U.S. Constitution pursuant to 42 U.S.C. §1983, invasion of privacy, trespass, false imprisonment, and conversion. (Doc. #3). Davis's Complaint further brings claims under 42 U.S.C. §1983 against the City of Springfield and its Police Chief, Steve Moody, (hereinafter "Defendant Springfield") and Defendant Clark County, including Assistant Prosecuting Attorney, Stephen Collins, and Prosecuting Attorney, Stephen Schumacher (hereinafter "Defendant Clark County").

## III.    DISCUSSION

Defendant Springfield contends that the Motion for Judgment on the Pleadings should be granted under Fed. R. Civ. P. 12(c), because Davis's claims are barred by the

applicable statues of limitations. (Doc. #13).  Similarly, Defendant Clark County moves this Court for Judgement on the Pleadings or, in the alternative, Summary Judgment as to all of Plaintiff's claims because (1) Plaintiff's claims are barred by the applicable statute of limitations and (2) Plaintiff's statutory wrongful imprisonment claim is against the state and is not properly addressed against Clark County, Ohio. (Doc. #16).

**A.    <u>Applicable Standards</u>**

Fed. R. Civ. P. 12(c) provides that "[a]fter the pleadings are closed –  but early enough not to delay trial – a party may move for judgment on the pleadings."  The standards applicable to a Motion for Judgment on the Pleadings are well established:

> 'For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.' *JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted).  A motion brought pursuant to Rule 12(c) is appropriately granted 'when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.' *Id.* at 582 (internal citation and quotation marks omitted).

*Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008); *see Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (and cases cited therein).When resolving a Rule 12(c) Motion, the Court ordinarily focuses on the well-pled allegations in the Complaint and may consider documents outside the pleadings only by converting the Motion into one for Summary Judgment under Rule 56(c).  *See Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc*., 452 F.3d 494, 503 (6th Cir. 2006).  However, the Court may consider matters of public record in deciding a Motion for Judgment on the

Pleadings without converting it into a Motion for Summary Judgment. *Commercial Money Center v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007)(citing in part *Lynch v. Leis*, 382 F.3d 642, 648 n.5 (6th Cir. 2004)).

**B.**     **Plaintiff's 42 U.S.C. § 1983 Claims**

The statute of limitations period applicable to the Plaintiff's § 1983 claims is two years. O.R.C. § 2305.10; *Browning v. Pendleton*, 869 F. 2d 989, 992 (6th Cir. 1989). Therefore, absent any tolling, Plaintiff had two years from the date his claims accrued to file his § 1983 action. The task of determining when Plaintiff's § 1983 claims accrued under federal law, and that of determining whether the accrual date was tolled under a provision of Ohio state law, are exclusive and distinct. The issue of accrual is further complicated by the categorization of the precise tort being asserted. As such, the Court will address the issue of when Plaintiff's § 1983 claims accrued in accordance with the tort being asserted, before turning to the issue of whether the accrual date was tolled during his period of incarceration.

**i.     The Issue of Accrual**

**a.     False Arrest and False Imprisonment Claims**

It is the standard rule that accrual occurs "when the plaintiff has 'a complete and present cause of action'. . .that is, when 'the plaintiff can file suit and obtain relief.'" *Wallace* v. *Kato*, 549 U.S. 384, 388 (2007)(citing *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1978)). The overarching theory of Plaintiff's Complaint is that the initial *Fourth Amendment* violation set the

wheels in motion for his subsequent conviction and incarceration; the unreasonable

search of his home by use of a defective warrant produced evidence that led to the

charges for possession and trafficking, which was introduced at trial over Plaintiff's

objections, subsequently producing his conviction and incarceration.  (Doc. #3 at ¶ 28).

More specifically, Plaintiff's first  § 1983 claim alleges that "Detective Nourse....engaged

in conduct which lead to the false arrest and false imprisonment of Plaintiff in violation of

the Fourth, Fourteenth, and Fifth Amendments." *Id*.

There are a number of relevant dates for the Court to consider:  November 23,

1998, the date on or about which the search of Plaintiff's home occurred; some time in

2003, when the Plaintiff first raised the issue of the defective affidavit; March 31, 2006,

when the Court of Appeals reversed and remanded for further proceedings; September 29,

2006, the date the Second District Court of Appeals ordered the immediate release of

Plaintiff; and October 12, 2006, the date Plaintiff was actually released form prison.

The Court finds that Plaintiff's false imprisonment claim accrued on, or shortly

after, November 23, 1998.  The  Court notes that "[f]alse arrest and false imprisonment

overlap; the former is a species of the latter."  *Wallace*, 549 U.S. at 389.  Therefore, the

Court refers to the two torts collectively as "false imprisonment."  False imprisonment

consists of detention without legal process.  *Id.*  Accordingly, "false imprisonment ends

once the victim becomes held *pursuant to such process* - - when, for example, he is bound

over by a magistrate or arraigned on charges.  *Id.* The damages for a false arrest and/or

false imprisonment claim begin at the time of detention and end upon the issuance of

6

process or arraignment. *Id.* A claim for any damages recoverable after such process has commenced are based on "a malicious prosecution claim, and on the wrongful use of judicial process, rather than detention itself." *Id.*

Therefore, the Court finds that Plaintiff's false imprisonment claim accrued shortly after November 23, 1998, the date Plaintiff became held pursuant to process. As Plaintiff did not file the present action until October 6, 2008, more than two years after his cause of action accrued, Plaintiff's false imprisonment claim is time barred. Next, the Court addresses its rationale for rejecting the accrual dates proffered by Plaintiff.

Plaintiff's theory that his false imprisonment continued throughout the legal process, including the appellate process which ultimately reversed his conviction, leads him to the assertion that his claim for false imprisonment did not accrue until October 12, 2006, the date of his actual release. (Doc. #17 at 5). In support of his argument, Plaintiff asserts that he did not discover the illegality of the intrusive search of his personal residence until it was pronounced by the Appellate Court in 2006, at which point Plaintiff was already falsely imprisoned. *Id.* Although Plaintiff briefly discusses the relevance of March 31, 2006, the day the Second District Court of Appeals held that the search warrant lacked probable cause, and September 29, 2006, the day the Court of Appeals ordered his immediate release, neither of those dates would prevent Plaintiff's false imprisonment claim from being time barred. Therefore, the Court will only proceed to address Plaintiff's argument that accrual commenced on the date of his release, October 12, 2006, a conclusion which would alleviate the statute of limitations issue.

Plaintiff adamantly contends that he was unable to bring a claim for false imprisonment during the period in which he was imprisoned, thus postponing the accrual date until the date of his release. (Doc. #17 at 5). Plaintiff argues that "the limitation period in a false imprisonment action commence[s] to run after the false imprisonment ends." *Id.* However, Plaintiff has extended the period for which he was a victim of "false imprisonment" well beyond the modern definition. It is undisputed that Plaintiff's false imprisonment began when he was apprehended by police officers following the search of his home. "Every confinement of the person is an imprisonment, whether it be in a common prison or in a private house, or in the stocks, or even by forcibly detaining one in the public streets; and when a man is lawfully in a house, it is imprisonment to prevent him from leaving the room in which he is." *Wallace,* 549 U.S. at 389 (citing Martin L. Newell, Law of Malicious Prosecution, False Imprisonment, and Abuse of Legal Process § 2, p 57 (1892)).

As previously discussed, false imprisonment ends when criminal proceedings begin. *Wallace,* 549 U.S. at 389. The rationale for this rule is illuminated by distinguishing between the categorization of damages. *Id.* at 390. Under the traditional rule of accrual, "tort claims accrue and the statute of limitations commences when the wrongful acts or omissions result in damages," regardless of whether those damages have been realized to their full extent. *Id.* at 391. Damages for imprisonment after legal process has commenced would be attributable to a tort other than the unlawful arrest. *Id.*

The Court finds, viewing the facts in a light most favorable to the Plaintiff, that

Plaintiff knew or had reason to know of the injuries which are the basis of his false imprisonment claim on or shortly after November 23, 1998. Even assuming that the damages suffered by Plaintiff during the pendency of the criminal process were consequences attributable to the unlawful search, that would not alter the commencement date. *Id.* Plaintiff could have filed his false imprisonment claim immediately upon his false arrest. Therefore, if the Court were to conclude that the continuing effect of the initial unlawful search served to postpone the end of Plaintiff's false imprisonment, and therefore the accrual of Plaintiff's claim, "the statute would begin to run only after plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." *Id.*

Plaintiff's false imprisonment, as defined by the Supreme Court in *Wallace*, ended on or near November 23, 1998, resulting in the accrual of Plaintiff's § 1983 false imprisonment claim more than two years before he filed his Complaint. Therefore, absent any tolling, Plaintiff's § 1983 claims against Defendant Springfield are time barred. The Court turns next to Plaintiff's § 1983 claims against Defendant Clark County.

### b. Malicious Prosecution Claim

Plaintiff's Complaint asserts a claim of malicious prosecution against Defendant Clark County for "continuing to prosecute [him] and to cause [his] incarceration…once it had legally been determined said party should be released." (Doc. at ¶ 38). In order to decide when Plaintiff's malicious prosecution claim accrued, the Court must determine: at what point in the Plaintiff's criminal proceedings were his criminal convictions or

sentence reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's habeas corpus?

A claim for Malicious Prosecution "does not accrue until the underlying conviction is invalidated." *Fox v. Desoto*, 489 F. 3d 227, 235 (6th Cir. 2007)(citing *Heck v. Humphrey*, 512 U.S. 477, 489-90 (1994); *Wallace*, 549 U.S. at 393)). *Heck* articulated the contours of the relationship between a malicious prosecution claim and § 1983 by explaining:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's habeas corpus, 28 U.S. C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

512 U.S. at 486-87.

There are four relevant dates collectively offered by Defendant Clark County and the Plaintiff, including: March 31, 2006, the date the Second District Court of Appeals held the search warrant affidavit used to search Plaintiff's home was insufficient to establish probable cause; September 29, 2006, the date the Second District Court of Appeals reaffirmed that its previous decision voided all of Plaintiff's convictions and ordered his immediate release; October 12, 2006, the date Plaintiff was released from

prison; and February 7, 2007, the date Plaintiff's convictions were actually dismissed.

The Court finds that Plaintiff's malicious prosecution claim accrued, at the latest, on September 29, 2006. On March 31, 2006, the Second District Court of Appeals sustained Plaintiff's first assignment of error; specifically, the Appellate Court found that "the trial court erred in denying [Davis's] motion to suppress evidence, since the affidavit for the search warrant was insufficient to establish probable cause." *State v. Davis*, 166 Ohio App. 3d 468, 473 (Second Dist. 2006). Accordingly, the Appellate Court reversed the judgment of the trial court and remanded the case for "further proceedings consistent with this opinion." *Id.* at 517. Defendant Clark County concedes that prior to March 31, 2006, Plaintiff could not have filed any § 1983 claim that would bear on the validity of his underlying conviction and the statute of limitations therefore could not have run prior to that date. (Doc. #22 at 4).

However, Defendant Clark County claims that "the plain language of *Heck*" and its use of the words "reversed on direct appeal" and "declared invalid by a state tribunal authorized to make such determination" clearly establish that Plaintiff's statute of limitations began to run when his conviction was vacated and reversed in March 2006. *Id.* The Court agrees that if Plaintiff is alleging prosecutorial misconduct in relation to his original conviction, his § 1983 claims properly accrued on March 31, 2006, the date his original conviction was reversed on direct appeal. Thus, Plaintiff's claim would have expired in March 2008, prior to the filing of his Complaint. However, Plaintiff's Complaint alleges Defendant Clark County "continu[ed] to prosecute and to cause

11

[Plaintiff's] incarceration…once it had legally been determined said party should be released." (Doc. #3 at 7). Therefore, to specifically address claim VII of Plaintiff's Complaint, the Court must determine: 1) whether, in viewing the facts in a light most favorable to the Plaintiff, it is possible that a continuing violation of prosecutorial misconduct persisted beyond March 31, 2006, and, if we answer in the affirmative; 2) whether Plaintiff's §1983 claim in relation to that conduct would have accrued on September 29, 2006, when the Second District Court of Appeals reaffirmed Plaintiff's previously vacated conviction, on October 12, 2006, when Plaintiff was released from prison, or on February 7, 2007, when Plaintiff's case was actually dismissed.

"[A] continuing violation is occasioned by continual unlawful acts, not continual ill-effects from an original violation." *Tolbert v. State of Ohio Dep't Transp.*, 172 F.3d 934, 940 (6th Cir. 1999). Further, a "plaintiff may not use the continuing violation theory to challenge discrete actions that occurred outside the limitations period even though the impact of the acts continues to be felt." *Pike v. City of Mission,* 731 F.2d 655, 660 (10th Cir. 1984); *see also Bergman v. U.S.,* 751 F.2d 314, 317 (10th Cir. 1984). The test to determine whether a continuing violation exists can be divided into three elements:

> First, the defendant's wrongful conduct must continue after the precipitating event that began the pattern. . . . Second, injury to the plaintiff must continue to accrue after that event. Finally, further injury to the plaintiff must have been avoidable if the defendants had at any time ceased their wrongful conduct.

*Edison v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007). As "continuing violations" Plaintiff specifies two unlawful acts; "Defendants…elected to

defend against [his] appeal of his convictions and re-prosecute him after his March 31, 2006 reversal." (Doc. #21 at 4).

For purposes of Defendant's Motion for Judgment on the Pleadings, all well-pleaded material allegations of the Plaintiff must be taken as true." *Tucker v. Middleburg-Legacy Place,* 539 F.3d 545, 549 (6th Cir. 2008). The Court therefore takes Plaintiff's assertion that Defendant Clark County continued to prosecute him and to cause his incarceration once it had legally been determined that he should be released, as true. As such, it would be possible for Plaintiff to establish that his injury, his incarceration, continued to accrue as a result of the continued prosecution. Further, Plaintiff could establish that the incarceration would have been avoided had Defendant Clark County ceased to enforce his sentence and conviction. Therefore, taking Plaintiff's material allegations as true, the Court answers the question of whether it is possible to find a continuing violation of prosecutorial misconduct beyond March 31, 2006, in the affirmative. The Court therefore proceeds to the question of whether Plaintiff's §1983 claim, in relation to the continuing conduct, would have accrued on September 29, 2006, October 12, 2006, or on February 7, 2007.

The alleged "continuing violations" of Defendant Clark County could not have postponed the accrual of Plaintiff's malicious prosecution claim beyond September 29, 2006. A finding of a continual prosecutorial misconduct will only postpone the accrual of Plaintiff's claim so long as it persists. Even assuming Defendant Clark County continued to engage in prosecutorial misconduct by "defending against Plaintiff's appeal" and/or

13

"re-prosecuting him after his March 31, 2006 reversal," these acts necessarily ceased

when, on September 29, 2006, the Second District Court of Appeals reaffirmed its March

31, 2006 decision and ordered Plaintiff's immediate release. *State v. Davis*, 2006 Ohio

5306, ¶ 10 (Ohio Ct. App. 2006). Plaintiff's Complaint does not allege  facts which could

support a finding that the prosecution engaged in unlawful acts beyond September 29,

2006. Accordingly, once the alleged continued violations stopped, Plaintiff's claim

immediately accrued, causing it to expire on September 29, 2008.

Although Plaintiff was not, in fact, released until October 12, 2006, the mere

thirteen days between the September 29, 2006, decision and Plaintiff's release from

prison is not properly categorized as a "continual unlawful act," but rather, are more

appropriate labeled as "continual ill-effects" from the original alleged violation. *See*

*Mann v. Compton*, 2007 U.S. Dist. LEXIS 19359 at *4-6(E.D. Ky., Mar. 16, 2007);

*McCormick v. Farrar*, 147 Fed. Appx. 716, 721-22 (10th Cir. 2005); (*Petaccio* v. *Davis*,

76 Fed. Appx. 442, 444-45 (3rd Cir. 2003). The delay is therefore insufficient to postpone

the accrual of Plaintiff's claim beyond September 29, 2006.

Lastly, the Court finds the delay in dismissing Plaintiff's case until February 7,

2007, insignificant for determining accrual of a malicious prosecution claim. Under *Heck,*

Plaintiff's malicious prosecution claim accrued once his criminal conviction or sentence

was **"reversed on direct appeal**, expunged by executive order, **declared invalid by a**

**state tribunal authorized to make such determination**, or called into question by a

federal court's habeas corpus." 512 U.S. at 486-87(emphasis added). The plain language

of *Heck* cannot be read to require the actual dismissal entry of a conviction as a prerequisite to filing a § 1983 claim. The fact that Plaintiff's conviction was "reversed on direct appeal," is sufficient to trigger the statute of limitations. Therefore, this delay is also insufficient to postpone the accrual of Plaintiff's claim against Defendant Clark County.

Therefore, Plaintiff's § 1983 claim against Defendant Clark County as it relates to any continuing violations of malicious prosecution asserted by Plaintiff would have accrued no later than September 29, 2006, and thereby expired on September 29, 2008. Because the Plaintiff did not file his Complaint until October 6, 2008, on its face, his claim is time-barred. Remaining for the Court's consideration is the presence, if any, of tolling.

ii.     **The Issue of Tolling**

Separate and apart from accrual date, Plaintiff contends that "the time period for the Plaintiff to file his § 1983 claims was tolled until two years from the date of his release, October 12, 2006." (Doc. #17 at 4).[3] The Plaintiff filed his § 1983 claims on October 6, 2008, which, according to Plaintiff, is within the permissible statute of limitations period. Defendant Springfield and Defendant Clark County argue that Plaintiff has not alleged the kind of disability for which O.R.C. §2305.16 would toll the

---

[3] Although this is what Plaintiff asserts, because Plaintiff claims that his "disability" requiring the tolling of the statute of limitations was his incarceration, and nothing else, it is assumed that he in fact argues that the statute of limitations was tolled until the date of his release, October 12, 2006; thus arguing that the statute of limitations did not begin to run until his date of release, causing it to expire on October 12, 2008.

statute of limitations. (Doc. #13 at 6); (Doc. #22 at 2). The Court finds Plaintiff's § 1983 claims were not tolled, and therefore continuously ran from their dates of accrual.

Although the date of accrual for a § 1983 claim is a matter of federal law, state tolling principles apply to determine the timeliness of claims. *Wilson v. Garcia,* 471 U.S. 261, 268-69 (1985). Ohio law recognizes only two disabilities which toll statutes of limitations: either being within the age of minority or being of unsound mind. O.R.C. § 2305.16. Neither of these disabilities apply to Plaintiff**.** Therefore, Plaintiff's § 1983 claims were not tolled during his period of incarceration. Accordingly, as all of Plaintiff's § 1983 claims accrued more than two years prior to filing his Complaint, Plaintiff's claims have expired. Next, the court addresses its rationale for rejecting Plaintiffs arguments in support of tolling the statute of limitations during his period of incarceration.

First, to support the argument that Plaintiff's incarceration tolled the two-year statute of limitations, Plaintiff relies on "the doctrine of equitable tolling," proclaiming that "the U.S. Supreme Court has refused to allow the statute of limitations to run while a claimant is incarcerated." (Doc. #17 at 4). This argument is without merit.

Typically, equitable tolling applies "only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control. *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.,* 209 F. 3d 552, 561 (6th Cir. 2000)(citations omitted). "Absent compelling equitable considerations, a court should not extend limitations by even a single day." *Id.* at 561. Additionally, " neither

'excusable neglect' nor ignorance of the law are sufficient to invoke equitable tolling."
See *Rose v. Dole*, 945 F. 2d 1331, 1335 (6th Cir. 1991)("It is well-settled that ignorance
of the law alone is not sufficient to warrant equitable tolling"); *Harris v. Hutchinson*, 209
F.3d 325, 329-30 (4th Cir. 2000)(equitable tolling should apply only where petitioner is
prevented from asserting his claim by wrongful conduct of the respondent or where
extraordinary circumstances beyond the petitioner's control make it impossible to file the
claim on time).

There are five factors to consider when determining the appropriateness of tolling
a statute of limitations: "1) lack of notice of the filing requirement; 2) lack of constructive
knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of
prejudice to the defendant; and 5) the plaintiff's reasonableness in remaining ignorant of
the particular legal requirement." *Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir.
1998).

The Court finds that the instant case does not merit the application of a rare
remedy such as equitable tolling. Plaintiff does not claim or demonstrate that he failed to
receive actual or constructive notice of the statute of limitations requirements, diligence
in pursuing his rights, an absence of prejudice to the Defendant, or reasonableness in
remaining ignorant of the statute of limitations requirements. Therefore, the doctrine of
equitable tolling cannot be appropriately applied to Plaintiff's case and his first argument
fails.

For his second argument, Plaintiff cites *Wallace v. Kato* in order to demonstrate that a statute of limitations for a claim of false imprisonment is tolled while the prisoner is under the disability of incarceration. (Doc. #17 at 4). Plaintiff has misinterpreted the holding of *Wallace* and its relevance to the issue of tolling, rather than accrual. In *Wallace*, the issue before the court was not whether the Plaintiff's § 1983 claim was tolled during the period of incarceration, but rather, whether that claim accrued on the date Plaintiff's conviction was vacated, or at some earlier point. 549 U.S. at 387-88. Consequently, the Supreme Court's holding in *Wallace* provides no guidance on the issue of tolling, making Plaintiff's reliance on it misplaced.

In sum, Plaintiff's § 1983 claims were not tolled during his period of incarceration. As such, all of Plaintiff's § 1983 claims accrued more than two years prior to filing his Complaint, and continued to run from that point. Plaintiff's claims against Defendant Springfield and Defendant Clark County are therefore time barred.

### C.  Plaintiff's Motion for Leave to File an Amended Complaint

Davis brings his Motion for Leave to File an Amended Complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure, and the Preliminary Pretrial Conference Order (Doc. #14). Pursuant to Fed. R. Civ. P. 15(a)(2), "a court should freely give leave to amend a complaint when justice so requires." However, leave to amend may be denied where the amendment would be futile." *Yuhasz v. Brush Wellman, Inc.,* 341 F. 3d 559, 569 (6th Cir. 2003)(citing *Foman v.Davis*, 371 U.S. 178, 182 (1962)).

Davis filed his proposed Amended Complaint on May 29, 2009. However, the Court is recommending dismissal of all of Davis's federal claims as time barred. In addition, Davis's Proposed Amended Complaint does not set forth any claims against the State of Ohio. Therefore, although this Court did indicate in its pretrial order that amended pleadings could be filed through May 29, 2009, allowing Plaintiff to file his proposed Amended complaint would be an exercise in futility; the Court is not required to take such action. *Marx v. Centran Corp.*, 747 F.2d 1536**,** 1551 (6th Cir. 1984)**;** *Oleson v. U.S.,* 27 Fed. Appx. 566, 569 (6th Cir. 2001).

## IV.    CONCLUSION

First, the Court finds that Plaintiff's § 1983 false arrest and false imprisonment claims accrued on or near November 23, 1998, the date of the unlawful search and arrest, and continually ran, thereby expiring on November 23, 2000. Accordingly, Claim V and VI of Plaintiff's Complaint should be dismissed as time barred. Second, the Court finds that Plaintiff's § 1983 malicious prosecution claim accrued, at the latest, on September 29, 2006, the date the Second District Court of Appeals reaffirmed Plaintiff's previously vacated conviction, thereby expiring on September 29, 2008. Therefore, Claim VII of Plaintiff's Complaint should be dismissed as time barred. Lastly, the Court finds that granting Plaintiff leave to file an Amended Complaint would be futile, and therefore, denies his request.

In the absence of a federal question, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. *See* 28 U.S.C. § 1367(c)(3).

## **IT IS THEREFORE RECOMMENDED THAT:**

1. The Motion of All Defendants for Judgement on the Pleadings (Doc. # 13) be GRANTED;

2. The Motion of All Defendants for Judgment on the Pleadings (Doc. #16) be GRANTED;

3. All state law claims be DISMISSED without prejudice; and

4. The Motion for Leave to File Amended Complaint (Doc. #14) be DENIED.

November 16, 2009

___s/Sharon L. Ovington_____
Sharon L. Ovington
United States Magistrate Judge

## <u>NOTICE REGARDING OBJECTIONS</u>

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).